IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| TERRANCE J. KNIGHT, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | CIVIL NO. 08-cv-272-DRH |
| ROGER WALKER, *et al.*, | ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

Plaintiff, an inmate at the Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks monetary and injunctive relief for alleged violations of his rights under the Eighth and Fourteenth Amendments. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on

its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Upon careful review of the complaint and the supporting exhibits, the Court finds that no claim in the original complaint may dismissed at this point in the litigation.

**THE COMPLAINT**

In Count 1 of the complaint, Plaintiff alleges that he was housed with another inmate, Dwayne Dykes, from February 4, 2008, until February 20, 2008. Plaintiff states that inmate Dykes is serving a "natural life" sentence and is classified as a "high max" security risk while Plaintiff is classified as a "medium low" security risk. Plaintiff asserts that inmates Dykes told him that if Plaintiff stepped on the floor of their shared cell he would "take [Plaintiff's] life." After being housed with inmate Dykes for sixteen days, Plaintiff was moved to another cell. There is no indication that inmate Dykes actually attacked or harmed Plaintiff. Plaintiff claims that prison officials violated his Eighth Amendment rights by failing to protect from inmate Dykes.

In Count 2, Plaintiff asserts that when he and other inmates are issued disciplinary tickets "the Adjustment Committee doesn't give [inmates] a chance to explain . . . they just scream 'Guilty' or 'Not Guilty.'" Plaintiff further alleges that when inmates file a grievance about the way disciplinary tickets are handled, Defendant Goffer "just gets rid of it" because her husband is the chairman of the Adjustment Committee. Plaintiff claims that his right to Due Process of law is violated by these allegations.

For Counts 3 and 4, Plaintiff alleges that Defendant Pollen ordered refills for all of Plaintiff's medications in sufficient quantities to cover the period January 17, 2008, until June 2008. Despite this, Plaintiff contends that he has been "completely out of" his Albuterol inhaler, Qvar, Aspirin, HCTZ, and Atentolol since March 9, 2008. Plaintiff states that he needs these medications to treat

2

his breathing problems and to treat high blood pressure. Plaintiff states spoke with Defendant Moore, a medical technician, on four separate occasions in March concerning his medication, but that Moore responded that Plaintiff would get it "when they find time to bring it to him." Plaintiff further alleges that he wrote Defendants Walker, Condor, Maue, Mitchell, Moore and Pollen concerning the fact that he was not getting his medication, but his correspondence went unanswered. Additionally, Plaintiff asserts that he verbally informed Defendant Clovis that he was not receiving his medication and that Clovis responded that "if you lose weight we wouldn't have to give you medication." Plaintiff contends that the Defendants have violated his Eighth Amendment right to receive adequate medical treatment for his serious medical needs.

In Count 5, Plaintiff charges that unnamed correctional staff will cancel "mandatory weekly yard (5hr) for no reason at all other then to say 'we don't feel like taking you out.'" Plaintiff claims that this action violates his Eighth Amendment rights to be free from cruel and unusual punishment.

In Count 6, Plaintiff asserts that he was told that his housing unit was shut down between 1998 and 2004 because it was unfit to live in due to improper ventilation, improper lighting, "asbestos threat, and messed up water pipes." Plaintiff claims that this violates his Eighth Amendment rights.

In Count 7, Plaintiff that all inmates were told by prison staff not to drink the water at MCC because it had high levels of mercury. Plaintiff states that, in addition to being orally informed by prison staff of this hazard, "it was also a notice placed on the Menard C.C. Movie Channel." Plaintiff complains, however, that for inmates who - like him - did not have a television, he would have never known about the mercury issue, unless he had been told by staff about it. Plaintiff appears to claim that his Eighth Amendment rights were violated.

3

In Count 8, Plaintiff asserts that due to improper ventilation, he is forced to use his inhalers three times more frequently then when he is "anywhere else." Plaintiff appears to claim that his Eighth Amendment rights are violated.

In Count 9, Plaintiff alleges that he is being provided cleaning supplies only once a month. Plaintiff states that the cells need to be cleaned "daily to keep from getting sick." Again, Plaintiff appears to claim that his Eighth Amendment rights are being violated.

## **DISCUSSION**

Counts 3 and 4 of the complaint, alleging that Plaintiff is being denied medication for his breathing and high blood pressure problems, and Count 8 of the complaint, alleging that Plaintiff's breathing condition is made worse by the inadequate ventilation at MCC, survive review under § 1915A and should not be dismissed at this time.

Count 1 of Plaintiff's complaint, however, should be dismissed. To establish an Eighth Amendment failure to protect claim, Plaintiff must demonstrate (1) that he suffered an objectively sufficiently serious injury and (2) that he was incarcerated under conditions imposing a sufficient risk of serious harm. *Borello v. Allison*, 446 F.3d 742, 747-48 (7th Cir. 2006). In this case, Plaintiff has not alleged that he has actually been attacked by another inmate. Furthermore, the complaint plainly states that Plaintiff is no longer being housed with inmate Dykes. As such, Plaintiff is not currently in danger of being attacked by Dykes. While Plaintiff need not suffer an actual attack to secure *prospective* relief on a claim that prison officials have failed to adequately protect him from other inmates, *Farmer v. Brennan*, 511 U.S. 825, 845 (1994); *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923), a backwards looking claim seeking *damages* against prison officials for failing to adequately protect Plaintiff from other inmates must be premised on an actual attack. *See*

4

*Babcock v. White*, 102 F.3d 267, 270-72 (7th Cir. 1996) (federal inmate who was not actually assaulted by another inmate who was known to pose a risk of attack, could not recover damages from prison officials for failing to protect him). Because Plaintiff did not suffer an actual attack and because he is not currently housed with inmate Dykes, Count 1 must be dismissed. Because there are not other claims being asserted against Defendant Drake, this Defendant should be dismissed from this action.

Count 2 of the complaint should also be dismissed. When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it

is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

Nothing in the complaint or exhibits suggests that the conditions that Plaintiff has had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Therefore, Plaintiff's due process claim is without merit.

Counts 5 of the complaint should be dismissed. A lack of exercise can rise to a constitutional violation, *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1986), and "exercise is now regarded in many quarters as an indispensable component of preventive medicine." *Anderson v. Romero*, 72 F.3d 518, 528 (7th Cir. 1995). Nevertheless, short-term denials of exercise may be inevitable in the prison context and are not so detrimental as to constitute a constitutional deprivation. *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997) (70-day denial permissible); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (28 day denial not deprivation); *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1089 (7th Cir. 1986) (limited recreational activities sufficient, where average prison stay was 10 days or less); *Caldwell v. Miller*, 790 F.2d 589, 601 (7th Cir. 1986) (no deprivation where exercise was denied for 30 days, but then allowed one hour indoor exercise for next 6 months); *but see Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (viable constitutional claim where prisoner denied recreational opportunities for 7 weeks); *Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (1989) (reversing summary judgment for prison officials where segregated prisoner denied exercise for 101 days). In this case, Plaintiff has alleged only the occasional, random, short-term, and infrequent denial of outdoor exercise. Therefore, Count 5 of the complaint should be dismissed pursuant to § 1915A.

6

Count 6 of the complaint should also be dismissed. Even assuming that the housing unit that Plaintiff is currently confined in was "shut down" between 1998 and 2004 due to various deficiencies, nothing in the instant complaint indicates that the current conditions are deficient. Furthermore, not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety rise to the level of a constitutional violation. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *See also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *See also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The instant complaint fails to allege facts satisfying the objective component of an Eighth Amendment claim. Therefore, Count 6 should be dismissed.

Count 7 of the complaint should be dismissed. Plaintiff's allegation that he was personally informed of the water problems at MCC by prison staff rather than by means of the television announcement does not state a claim for relief. Plaintiff does not have a right to be provided information by any particular method especially where - as here - Plaintiff actually received the information.

Count 9 of the complaint should be dismissed. Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981) ; *See also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, however, a plaintiff must allege facts that, if true, would satisfy the objective and subjective

components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *See also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id.* The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

In the instant case, Plaintiff has not alleged any facts indicating that the cells were so filthy that they constituted a significant threat to inmate health or safety. As such, Plaintiff's claim that he was denied cleaning supplies - standing alone - does not rise to the level of a constitutional claim. *See McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (explaining that "the degree of filth endured" was important to the consideration of whether a prisoner stated an Eighth Amendment claim); *Lunsford v. Bennet*, 17 F.3d 1574 (7th Cir. 1994) (holding that a temporary denial of cleaning supplies did not violate the Eighth Amendment when the record lacked evidence that prisoners' cells were "unusually dirty or unhealthy, or that health hazards existed.").

Plaintiff's claims against Defendants Michelle, Medical Staff, and Wexford Medical Services should be dismissed for the additional reason that Plaintiff has failed to allege how these defendants were directly responsible for the alleged violations of his constitutional rights. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (theory of respondeat superior does not apply to § 1983 actions); *see also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Eades v.*

*Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981).

Also before the Court is Plaintiff's motion for appointment of counsel (Doc. 3). There is no absolute right to appointment of counsel in a civil case. *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *Peterson v. Nadler*, 452 F.2d 754 (8th Cir. 1971). When presented with a request to appoint counsel, the Court must make the following inquiries: "(1) has the ... plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself." *Pruitt v. Mote*, 503 F.3d647, 854-55 (7th Cir. 2007). With regard to the first step of the inquiry, there is no indication at all whether Plaintiff has attempted to obtain counsel or been effectively precluded from doing so. Therefore, Plaintiff's motion for appointment of counsel will be denied, without prejudice.

Plaintiff's motion to be transferred to another prison (Doc. 5) will be denied. Plaintiff does not have a right to be held in any specific prison.

Plaintiff's motion to access legal copies, supplies, and the law library (Doc. 6) will be denied, without prejudice. While prison officials have an affirmative obligation to assist prisoners with certain types of litigation, *Bounds v. Smith*, 430 U.S. 817, 828 (1977), they have discretion concerning how to discharge their obligations. At this stage of this case, the Court believes that it is premature to direct how prison officials should discharge their constitutional obligations toward Plaintiff with regard to this case. Moreover, prison officials actions do not rise to the level of an independent constitutional violation of a prisoner's right of access to the courts unless the prisoner can establish actual prejudice to a non-frivolous claim. *Alston v. DeBruyn,* 13 F.3d 1036, 1041 (7th Cir. 1994). There is no indication that Plaintif is or will suffer actual prejudice to his claims.

**DISPOSITION**

Counts 1, 2, 5, 6, 7, and 9 of the complaint are **DISMISSED**, with prejudice, pursuant to 28 U.S.C. § 1915A.

Because there are no claims currently pending against them, Defendants Michelle, Medical Staff, Wexford Medical Services, and Drake are **DISMISSED** from this action.

Plaintiff's motion for appointment of counsel (Doc. 3) is **DENIED**, without prejudice.

Plaintiff's motion to be transferred to another prison (Doc. 5) is **DENIED**.

Plaintiff's motion to access legal copies, supplies, and law books (Doc. 6) is **DENIED**, without prejudice.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **POLLEN, MOORE, WALKER, CONDOR, MAUE, CLOVIS, BURNELL, and GOFFER**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **POLLEN, MOORE, WALKER, CONDOR, MAUE, CLOVIS, BURNELL, and GOFFER** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of

the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants **POLLEN, MOORE, WALKER, CONDOR, MAUE, CLOVIS, BURNELL, and GOFFER** are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**DATED:** November 10, 2008.

                                                /s/   DavidRHerndon
                                                **DISTRICT JUDGE**